**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**CHRISTOPHER PATRICK
MICHAEL ROSBOUGH,**

      **Plaintiff,**

**VS.**                         **Case No. 4:15cv583-RH/CAS**

**FLORIDA STATE UNIVERSITY,
THOMAS BLOMBERG,
and NANCY MARCUS,**

      **Defendants.**
_____/


## ORDER and REPORT AND RECOMMENDATION

      This case was transferred to this Court in late November 2015. ECF Nos. 12-13. Plaintiff, who is pro se, filed an amended complaint, ECF No. 11, and Defendants filed an answer, ECF No. 18. The parties were provided an opportunity to conduct discovery, *see* ECF Nos. 19-22, and at the conclusion of the discovery period, Defendants filed a summary judgment motion, ECF No. 34, supported by five affidavits, ECF Nos. 35-39, and Plaintiff's deposition testimony, ECF No. 40. Plaintiff was advised of his obligation to file a response in opposition to the motion. ECF No. 41.

After being granted additional time in which to respond, *see* ECF Nos. 42 and 44, Plaintiff submitted responses and supporting evidence on January 25, 2017. ECF Nos. 45-50. Plaintiff's responses did not comply with the rules of this Court or the prior Order. Thus, Plaintiff was given additional time in which to submit an amended response. ECF No. 51. Plaintiff was specifically advised that he must filed only one response to the motion for summary judgment, not three separate responses. *Id.* Additionally, Plaintiff was reminded again that a memorandum filed in opposition to a summary judgment motion "must include pinpoint citations to the record evidence supporting each factual assertion." N.D. Fla. Loc. R. 56.1(F) (quoted in ECF No. 41 at 5, ECF No. 51 at 2). Plaintiff was informed that the Court would not review Plaintiff's evidence to attempt to locate relevant facts if his memorandum did not include any specific references. *Id.*

Plaintiff filed his response to Defendant's motion for summary judgment on February 24, 2017. ECF No. 52. Included with Plaintiff's submission are three exhibits: (1) a copy of Florida State University's Student Academic Resource Committee (SARC) report dated November 4, 2014, ECF No. 53; (2) a follow-up letter to the psychological report on

Plaintiff from Dr. Wendy B. Rice, ECF No. 54; and (3) a Psychological

Report with an Addendum, ECF No. 55.

## I.  Motion to Strike

Defendants filed a motion to strike the letter from Dr. Rice and the

Psychological Report because they are unsworn and unauthenticated.

ECF No. 56.  Plaintiff has not filed a response to the motion.

Defendants contend that documents offered in opposition to a

summary judgment motion "must be authenticated, either by affidavit

satisfying the requirements of Federal Rule of Civil Procedure 56 or in

accord with the Federal Rules of Evidence."  ECF No. 56 at 2 (citing Wells

v. XPEDX, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, at *2 (M.D. Fla.

Sept. 11, 2007), aff'd in part, 319 F. App'x 798 (11th Cir. 2009) (stating "a

document must be authenticated, either by an affidavit that meets the

requirements of Rule 56(e), Federal Rules of Civil Procedure, or in accord

with the Federal Rules of Evidence.") (citing Williams v. Eckerd Family

Youth Alternative, 908 F.Supp. 908, 911 (M.D. Fla.1995)).

In 2010, the Federal Rules of Civil Procedure were amended.  Prior

to those amendments, "Rule 56 arguably required that all documents

submitted to support or oppose a summary judgment be authenticated."

Abbott v. Elwood Staffing Servs., Inc., 44 F. Supp. 3d 1125, 1133 (N.D. Ala. 2014) (citations omitted). Relying on the language of Rule 56(e) as it existed prior to the 2010 amendments,[1] the Eleventh Circuit stated: "To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Saunders v. Emory Healthcare, Inc., 360 F. App'x 110, 113 (11th Cir. 2010) (quoted in Abbott, 44 F. Supp. 3d at 1132). However, Rule 56 no longer contains the requirement that documents submitted at the summary judgment stage be authenticated. Cazeau v. Wells Fargo Bank, N.A., No. 1:13-CV-0260-AT-JFK, 2014 WL 11444089, at *1 (N.D. Ga. May 29, 2014), report and recommendation adopted, No. 1:13-CV-0260-AT, 2014 WL 11444090 (N.D. Ga. Sept. 25, 2014), aff'd, 614 F. App'x 972 (11th Cir. 2015) (noting the authentication provision of Rule 56(e) "was omitted in the amended

---

[1] The relevant portion of "[f]ormer Rule 56(e) contained an unequivocal direction that documents presented in connection with a summary judgment motion must be authenticated: 'If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.'" Abbott, 44 F. Supp. 3d at 1134 (quoting Foreword Magazine, Inc. v. OverDrive, Inc., 2011 WL 5169384, at *2 (W.D.Mich. 2011) (quoting the 2009 version of Rule 56(e)(1)).

Rule 56").  "Rather, the amended Rule allows a party making or opposing a summary judgment motion to cite to materials in the record including, among other things, 'depositions, documents, electronically stored information, affidavits or declarations' and the like."  Abbott, 44 F. Supp. 3d at 1134 (quoting Foreward Magazine, Inc. v. OverDrive, Inc., 2011 WL 5169384, at *2 (W.D. Mich. 2011) (quoting Rule 56(c)(1)(A))).  "If the opposing party believes that such materials 'cannot be presented in a form that would be admissible in evidence,' that party must file an objection."  In re Gregg, No. 11-40125- JTL, 2013 WL 3989061, at *3 (Bankr. M.D. Ga. July 2, 2013) (quoting Foreward Magazine, 2011 WL 5169384, at *2) (quoting Rule 56(c)(2))).  "Significantly, the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be."  In re Gregg, 2013 WL 3989061, at *3; see also Abbott, 44 F. Supp. 3d at 1134.  "Thus under current Rule 56, an objection cannot be based solely on evidence not being authenticated—the objection must be that evidence cannot be presented in admissible form, not that the evidence has not been presented in admissible form."  Abbott, 44 F. Supp. 3d at 1135 (quoting In re Gregg, 2013 WL 3989061, at *3).

Here, both the challenged letter and the report appear to have been generated on Rice Psychology Group letterhead. The authenticity of the documents is not questioned by Defendants, only the fact that Plaintiff did not authenticate them when submitting them as evidence. *See* Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd., 226 F. Supp. 3d 828, 844 (W.D. Ky. 2016) (overruling objection that letter was not authenticated). Because it is no longer required that Plaintiff submit authenticated documents in opposition to summary judgment, and because Defendants have not objected that Plaintiff's exhibits could not be presented in admissible form should this case proceed to trial, the objection is overruled.

## II. Claims raised in the Amended Complaint, ECF No. 11

Plaintiff Christopher Rosbough alleged that while he was a student at the Florida State University ("FSU"), Defendants "acted with 'deliberate indifference' by not properly and not fully providing adequate accommodations to" him. ECF No. 11 at 2-3. He alleged that "when provided, accommodations were 'inappropriate or inadequate' based on" his learning disabilities. *Id.* at 3. The events at issue took place between December 2013 and May 1, 2015. *Id.* Mr. Rosbough asserts six claims

against Defendants FSU, Thomas Blomberg, and Nancy Marcus:[2] (1) an ADA claim for failing to provide accommodations; (2) a 42 U.S.C. § 1983 claim; (3) a claim under the Rehabilitation Act; (4) a second claim under the Rehabilitation Act; (5) a due process claim; and (6) an equal protection claim. *Id.* at 4-5. As relief, Mr. Rosbough seeks accommodations and monetary damages.

## III. Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

[2] Mr. Blomberg is the Dean of the College of Criminology and Criminal Justice at Florida State University. ECF No. 35-1 at 1 (Blomberg Aff.). Nancy Marcus is the Dean of the graduate School at Florida State University. ECF No. 38-1 at 1 (Marcus Aff.)

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[3] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). "[T]he issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d

---

[3] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

Case No. 4:15cv583-RH/CAS

at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."), but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

## IV.   The undisputed, relevant Rule 56(e) evidence[4]

Mr. Rosbough became a student at FSU in August 2009.  ECF No. 40-1 at 13 (Depo.).[5]  He was doctoral student pursuing a degree in FSU's College of Criminology and Criminal Justice.  *Id.* at 26; ECF No. 38-1 at 1-2 (Marcus Aff. ¶3).  The program has certain course requirements, ECF No. 40-1 at 28 (Depo.), followed by the successful completion of two preliminary examinations in Theory and Methods.  ECF No. 35-1 at 1-2 (Bloomberg Aff. ¶3). The examinations are offered once in both the spring and fall semesters, and students must pass them prior to "entering the dissertation stage of the College's PhD program."  *Id.*

The College of Criminology and Criminal Justice has a written policy that permits students only "two attempts" to pass the preliminary examinations.  ECF No. 38-1 at 3 (Marcus Aff. ¶7).  That policy is set forth in the General Bulletin Graduate Edition.  ECF No. 38-1 at 3 (Marcus Aff. ¶7) (citing Ex. C (ECF No. 38-1 at 23)).  Thus, "a student who fails the

---

[4] Mr. Rosbough provided a statement of facts but did not provide pinpoint citations to the record to support several factual assertions.  *See* ECF No. 52 at 3-4. The statements have, nevertheless been considered as evidence.  N.D. Fla. Loc. R. 56.1(F).

[5] Because Mr. Rosbough is pro se in this case and does not have access to the Court's electronic docket (ECF), references to the exhibits submitted in this case are, first, to the ECF document and page, followed by a descriptive title of the exhibit.

Theory or Methods examinations (or both) has [only] one more opportunity to pass the examinations."  ECF No. 35-1 at 2 (Bloomberg Aff. ¶3). "Failure to pass either examinations a second time results in dismissal from the PhD program."  *Id.*  Notwithstanding, the College also has a policy which permits "the dean of the College to grant special permission for a third attempt."  ECF No. 38-1 at 3 (Marcus Aff. ¶8).

In November 2011, Plaintiff referred himself to FSU's Student Disability Resource Center ("SDRC") because he was feeling stressed and had anxiety about one of his classes.  ECF No. 40-1 at 36, 39-40 (Depo.). Mr. Rosbough explained in his deposition that he would "look at information" but not be able to "digest it."  *Id.* at 36.  Mr. Rosbough worked with Tim Ebener at SDRC, *id.* at 40, who was the Associate Director.  ECF No. 37-1 at 2 (Ebener Aff. ¶2).

"The SDRC was established to serve as an advocate for FSU students with disabilities and to ensure reasonable accommodations are provided to those students."  ECF No. 37-1 at 2 (Ebener Aff. ¶3).  The SDRC assists students with "testing support, assistive technologies, [and] coaching," and also "works with faculty to provide academic accommodations for students with disabilities."  *Id.*  Common "academic

accommodations include extended time on tests,[6] use of peer note takers,

reduced distraction testing environment, and use of adaptive technologies."

*Id.* To determine whether a student needs accommodations, the SDRC

requires "documentation of a student's disability that consists of an

evaluation by a qualified and licensed professional and describes the

current impact of the disability." *Id.* at 2 (Ebener Aff. ¶4). "The SDRC itself

does not perform assessments of students." *Id.* (Ebener Aff. ¶3). The

SDRC reviews the documentation, meets with the student, and examines

all information "to determine whether the student qualifies for reasonable

academic accommodations based upon the evidence of a significant

functional impairment." *Id.* at 2-3 (Ebener Aff. ¶4). After determining that a

student qualifies, the reasonable accommodations for that student are

determined on an individual basis. *Id.* at 3 (Ebener Aff. ¶4). The SDRC

provides students with a letter outlining the recommended

accommodations which a student must give to his or her instructors. *Id.*

---

[6] "The typical time given to a student who requires extended time for examinations and quizzes is an additional 50%. It is less common for a student to receive 100% additional time without a history of receiving that accommodation." ECF No. 37-1 at 4 (Ebener Aff. ¶7).

"The SDRC assists the student in working with faculty, as needed, to ensure that the student receives the approved accommodations." *Id.*

Prior to seeking assistance from the SDRC, Mr. Rosbough referred himself to the Adult Learning Evaluation Center for a psycho-educational evaluation. ECF No. 37-1 at 4 (Ebener Aff. ¶8); ECF No. 40-1 at 40 (Depo.). The SDRC reviewed the report from the Center "and determined that reasonable accommodations for Mr. Rosbough would include 50% extended time on tests and a distraction-reduced environment for test taking." ECF No. 37-1 at 5 (Ebener Aff. ¶8); ECF No. 40-1 at 42 (Depo.). A memorandum was prepared by SDRC on January 25, 2011, and given to Mr. Rosbough to provide "to FSU's faculty so that he would be accommodated for exams, tests, and quizzes." ECF No. 37-1 at 5 (Ebener Aff. ¶8). Mr. Ebener knew that Mr. Rosbough was continuing to do coursework at FSU, but heard no further "complaints from Mr. Rosbough about his accommodations as related to his coursework." *Id.*

Mr. Rosbough took the Theory and Methods examinations in the spring of 2013, and the SDRC "accommodations were made available to Mr. Rosbough. ECF No. 35-1 at 3 (Blomberg Aff. ¶7). Mr. Rosbough "passed the Theory examination, but failed the Methods examination." *Id.*

(*Id.* at ¶8).  Mr. Rosbough "wanted to work on his study skills with SDRC before re-taking the Methods examination," but Mr. Rosbough did not suggest to Mr. Ebener "that he needed new or revised accommodations as related to test taking."  ECF No. 37-1 at 5 (Ebener Aff. ¶9).

Mr. Rosbough re-took the Methods examination in the fall of 2013. *Id.* at 6 (Ebener Aff. ¶10).  "Again, the College furnished the accommodations identified by the SDRC," but Mr. Rosbough "failed the Methods examination a second time."  *Id.*; *see also* ECF No. 38-1 at 3 (Marcus Aff. ¶6) (noting that Mr. Rosbough again received "50% additional time to complete the examination as he requested.").

"After failing the examination a second time, Mr. Rosbough communicated to [Mr. Ebener], in November 2013, that he thought there was a possibility of another condition/diagnosis being the reason for his inability to pass his remaining preliminary examination."  ECF No. 37-1 at 6 (Ebener Aff. ¶11).  Mr. Rosbough participated in additional testing from outside evaluators to assist in determining need for [additional] accommodation."  ECF No. 37-1 at 7 (Ebener Aff. ¶13).

In April and early May 2014, Mr. Rosbough "was self-referred to Rice Psychology Group for an updated psychoeducational evaluation to

determine whether he might have Dyslexia."  ECF No. 55 at 2.  It appears

that "feedback" was provided from Rice Psychology Group on May 29,

2014.  *Id.*  After a discussion of the tests performed and the results, several

academic accommodations were made for Mr. Rosbough to re-take the

test, with a strong recommendation that he be "given at least double time

on exams to compensate for his memory, attention and learning deficits."

ECF No. 55 at 12 (emphasis in original).  The specific recommendations

made were "that [Mr. Rosbough] be allowed to work for 4 consecutive 8

hour days to complete the exam."  ECF No. 55 at 12.  Additional

recommendations included "both auditory and visual presentation of the

exam material," and structuring of tests so as to "require recognition rather

than recall of information," and to be provided a calculator if math

calculations were required.  *Id.*

Although a specific date was not clearly identified, Dean Blomberg

"dismissed Mr. Rosbough from the PhD program as he failed to pass both

comprehensive preliminary examinations within two attempts."  ECF No.

35-1 at 3 (Blomberg Aff. ¶9).  Mr. Rosbough submitted an appeal,

requesting "a third attempt at the Methods examination."  *Id.*  Dean

Blomberg denied the request because Mr. Rosbough had been provided

SDRC's recommended accommodations in both of his prior examinations and his "request was simply for a third attempt." *Id.* at 3-4 (Blomberg Aff. ¶9).

Mr. Rosbough filed a grievance through FSU's academic appeals process concerning the denial of his request to take the examination a third time. ECF No. 36-1 at 2-3 (Buchanan Aff. ¶6). Dean Marcus was asked to review the issue and "concluded that Dean Blomberg was justified in denying Mr. Rosbough's appeal for a third attempt at the Methods examination." ECF No. 38-1 at 3 (Marcus Aff. ¶8).

Dean Marcus noted that it was only after Mr. Rosbough "failed the examination, for a second time, did Mr. Rosbough identify other possible explanations, such as dyslexia, for his failure to pass the Methods examination." ECF No. 38-1 at 4 (Marcus, Aff. ¶9). "Between the first and second examination attempt, Mr. Rosbough did nothing to indicate he might need a different accommodation, such as more time." *Id.* "Further, when Mr. Rosbough raised possible explanations for his performance after failing the Methods examination for a second time, he did not provide any documentation substantiating the newly raised potential explanations for

his performance, nor did Mr. Rosbough suggest any new accommodations that would justify a third attempt at the examination." *Id.*

After the denial by Deans Blomberg and Marcus, and after being granted an extension of time, Mr. Rosbough submitted a formal appeal on May 29, 2014, to Jennifer Buchanan, the Assistant Vice President for Faculty Development and Advancement. ECF No. 36-1 at 2-3 (Buchanan Aff. ¶7. His appeal went before the Faculty Senate Student Academic Relations Commission ("SARC"), on October 28, 2014, with Mr. Rosbough present, and he "was emailed the materials that SARC would be reviewing in advance of the meeting." ECF No. 36-1 at 3-4 (Buchanan Aff. ¶9). The decision permitting Mr. Rosbough to "be afforded a third attempt at the Methods examination, with" additional time was made on or about November 4, 2014. ECF No. 36-1 at 4 (Buchanan Aff. ¶10). A third re-take of the examination was permitted because two other students had previously been permitted to have a third attempt at passing the methods portion of the comprehensive exam. *See* Defendants' Ex. C (ECF No. 36-1 at 9); Plaintiff's Exhibit (ECF No. 53).

"The SARC recommendation, approved by the Provost, is considered final agency action and was filed with the Agency Clerk on November 5,

2014." ECF No. 36-1 at 4 (Buchanan Aff. ¶11). Mr. Rosbough was advised that he could appeal that final decision pursuant to Florida Rule of Appellate Procedure 9.190, by filing a petition for certiorari review within thirty days of the final University decision." *Id.* (Buchanan Aff. ¶12). "There is no indication that Mr. Rosbough sought judicial review of this final agency action." *Id.*

Following the SARC decision, the Ph.D. Methods/Statistics Exam Committee met in late 2014 or early 2015 to review the recommendations identified by the SDRC for providing Mr. Rosbough with a third attempt to pass the exam. ECF No. 39-1 at 2 (Stults Aff. ¶4). Three recommendations were submitted by the SDRC as outlined in a January 15, 2015, memorandum: 100 % additional time, separate testing location, and a reader or use of assistive technology to read aloud. ECF No. 39-1 at 2 (Stults Aff. ¶5); *see* Ex. A (ECF No. 39-1 at 5). The Committee determined that Mr. Rosbough would be provided "100 % additional time" to retake the examination. *See* ECF No. 35-1 at 5-6 (Blomberg Aff. ¶13); ECF No. 39 at 2-4 (Stults Aff. ¶5-¶7); ECF No. 37-1 at 7-9 (Ebener Aff. ¶15-¶22). The affidavit submitted by Mr. Brian Stults explained the concerns with options such as providing Mr. Rosbough with 16 hours on

one day to take the exam, which was deemed unreasonable, and providing him with two days to take the entire examination which might compromise the integrity of the examination. ECF No. 39-1 at 2-3 (Stults Aff. ¶5). Thus, Mr. Rosbough was ultimately provided "two (2) consecutive days to complete the exam, with eight (8) hours each day," and he would receive only the first half of the exam on day one and be given the second half of the exam on day two. *Id.* at 3 (Stults Aff. ¶5). Additionally, the Committee agreed that Mr. Rosbough's test would take place at the SDRC, and he would be provided with "a reader." *Id.* at 4 (Stults Aff. ¶6); *see also* ECF No. 37-1 at 7 (Ebener Aff. ¶15).

Mr. Rosbough "was re-admitted to FSU for the purpose of re-taking the Methods examination." ECF No. 36-1 at 4 (Buchanan Aff. ¶14). Mr. Ebener was advised on January 26, 2015, of the decision to permit Mr. Rosbough to take the test for a third time, that the testing would take place over two consecutive days at the SDRC testing lab, and he would be provided a reader "or use of assistive technology to read aloud." ECF No. 37-1 at 8 (Ebener Aff. ¶18). Mr. Ebener conveyed that information to Mr. Rosbough and told him the "testing would begin on April 6, 2015 and conclude April 7, 2015." *Id.* at 8 (Ebener Aff. ¶19).

Case No. 4:15cv583-RH/CAS

Mr. Rosbough did not appear to retake the examination for the third time. ECF No. 37-1 at 8 (Ebener Aff. ¶21); ECF No. 36-1 at 5 (Buchanan Aff. ¶14). Mr. Ebener's affidavit explains that Mr. Rosbough was not satisfied with the test being administered over two days for eight hours a day, "and not receiving access to all of the questions, including the second day questions, on the first day of the exam." ECF No. 37-1 at 9 (Ebener Aff. ¶22). However, Mr. Ebener confirms that the testing plan was in line with the recommendation made in the 2014 psycho-educational report provided by Rice Psychology Group. *Id.* He states that the "evaluator preparing the report actually indicated that eight-hour blocks were acceptable periods of time in which to administer testing to Mr. Rosbough." *Id.* Mr. Rosbough "was subsequently dismissed from the program" because "he did not appear to take the exam." ECF No. 39-1 at 4 (Stults Aff. ¶7); *see also* ECF No. 35-1 at 6 (Blomberg Aff. ¶15).

On May 1, 2015, a "follow-up" letter was prepared by Wendy B. Rice, Psy.D., of the Rice Psychology Group. ECF No. 54 at 2-3. The letter states that Mr. Rosbough had requested "additional justification for the testing accommodation" that had been submitted a year earlier, in May of 2014. ECF No. 54 at 2. That letter stated that because of Mr. Rosbough's

"attention, memory and learning problems," it was "unrealistic to expect him

to perform optimally for *more* than 4 hours of exams in one day." *Id.* The

letter requests that he be offered "the opportunity to take the test for 4

hours per day over 4 days, for a total of 16 hours." *Id.*

Dean Blomberg declares that he did not discriminate against

Mr. Rosbough because of a disability and he "was never treated differently

because of disability." ECF No. 35-1 at 6 (Blomberg Aff. ¶16). "At all times

that Mr. Rosbough was a student in the College, he was provided the

accommodations the SDRC identified for his benefit." *Id.* at 7 (Blomberg

Aff. ¶17).

Mr. Rosbough admitted in his deposition testimony that it was his

responsibility to provide the accommodation recommendations identified by

the SDRC to his professors. ECF No. 40-1 at 43 (Depo.). He admitted that

nobody at FSU ever refused to give him the written accommodations. *Id.*;

*see also* at 46. Mr. Rosbough also acknowledged that he never

complained or otherwise expressed to FSU officials that he needed

additional or different accommodations. *Id.* at 47.

## V.  Analysis

### A.  ADA & Rehabilitation Act Claims

"The ADA was enacted in 1990 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Alboniga v. Sch. Bd. of Broward Cty. Fla., 87 F. Supp. 3d 1319, 1331 (S.D. Fla. 2015) (quoting 42 U.S.C. § 12101(b)(1)).  "Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, 42 U.S.C. §§ 12131-12165, provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.'" Tennessee v. Lane, 541 U.S. 509, 513, 124 S. Ct. 1978, 1982, 158 L. Ed. 2d 820 (2004) (quoting 42 U.S.C. § 12132).  "Section 504 [of the Rehabilitation Act] similarly prohibits such discrimination by entities that receive federal financial assistance. Alboniga, 87 F. Supp. 3d at 1331 (citing 29 U.S.C. § 794).  "Coverage broadly includes the countless programs, services, and activities of public schools and state and local education departments and agencies.  87 F. Supp. 3d at 1331-32 (citing 42 U.S.C. § 12131; 28 C.F.R. § 35.104).  "The requirements under Title II to

make 'reasonable modifications of policies, practices, and procedures,' and the requirement under Section 504 to make 'reasonable accommodations,' are, except with respect to causation, materially identical."  87 F. Supp. 3d at 1332 (citing Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist., 133 F.3d 816, 821 (11th Cir. 1998) ("Congress intended Title II to work in the same manner as Section 504 of the Rehabilitation Act.")[7] (other citation omitted).  Because "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases, see 29 U.S.C. § 794(d)," the Eleventh Circuit has discussed the "two claims together."  Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also* Iaciofano v. Sch. Bd. of Broward Cty., Florida, No. 16-CV-60963, 2017 WL 564368, at *3 (S.D. Fla. Feb. 13, 2017) (addressing Rehabilitation Act and ADA "claims under a single standard.").

To state a "Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services,

_____

[7] The Rehabilitation Act "states, in relevant part, that, '[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"  29 U.S.C. § 794(a) (quoted in Berkery v. Kaplan, 518 F. App'x 813, 814 (11th Cir. 2013)).

programs, or activities, or was otherwise discriminated against by the

public entity; and (3) that the exclusion, denial of benefit, or discrimination

was by reason of the plaintiff's disability." Alboniga, 87 F. Supp. 3d at 1337

(quoting Bircoll v. Miami–Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)

(other citations omitted). "Section 504 simply prohibits discrimination

against disabled persons" with a provision that "is almost identical to

Section 504." Jennifer B. v. Chilton Cty. Bd. of Educ., 891 F. Supp. 2d

1313, 1321 (M.D. Ala. 2012). "Thus, discrimination cases under Section

504 have precedential value for cases arising under the ADA, and vice-

versa." Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) (cited in

Jennifer B., 891 F. Supp. 2d at 1321).

Mr. Rosbough alleged that he suffered discrimination under the ADA

because Defendants failed "to provide proper, reasonable, and timely

accommodations for academic testing." ECF No. 11 at 4. Likewise, he

claimed a violation of the Rehabilitation Act due to discrimination by

denying him "proper learning accommodations." *Id.* at 5. "[W]here, as

here, a plaintiff alleges discrimination based on a public entity's refusal to

provide a reasonable accommodation, the plaintiff must also establish that

the plaintiff requested an accommodation (or the need for one was

obvious) and that the public entity failed to provide a reasonable accommodation." Schwarz v. The Villages Charter Sch., Inc., 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016), aff'd sub nom. Schwarz v. Bd. of Supervisors on behalf of Villages Cmty. Dev. Districts, 672 F. App'x 981 (11th Cir. 2017) (citing McCullum v. Orlando Regional Healthcare, No. 6:11–cv–1387–Orl–31GJK, 2013 WL 1212860, at *4 (M.D.Fla. March 25, 2013).  Indeed, a "defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) quoted in Smith v. Rainey, 747 F. Supp. 2d 1327, 1338 (M.D. Fla. 2010)).  This requirement is conclusive as to Mr. Rosbough's ADA and Rehabilitation Act claims.

Prior to his request for permission to retake the exam for the third time, Mr. Rosbough did not make a specific request to take the examination in less than eight hour blocks of time over a two day period. The only recommendation from Rice Psychology which was received by the SDRC prior to setting accommodations for Mr. Rosbough was dated May 29, 2014.  ECF No. 55 at 2.  The recommendation states it would be permissible to provide Mr. Rosbough "4 consecutive 8 hour days to

complete the exam." *Id.* at 12.  Mr. Rosbough now takes issue with that recommendation, contending that he "did not appear for the third attempt of the Methods Exam due to his belief that existing accommodations were insufficient . . . ."  ECF No. 52 at 5.  He argues that his "request to have the exam given over the period of four days" for only four hours each day "was denied" and was discriminatory.  *Id.* at 4-5.  However, Mr. Rosbough has provided no evidence to show that a revised recommendation was made, and presented, to the Committee or to SDRC prior to establishing the third test dates and structure.  The evidence Mr. Rosbough submitted shows that a "follow-up" letter was not written until May 1, 2015.  ECF No. 54 at 2. It was only in that "follow-up" letter that a recommendation was made to provide testing for only "4 hour[s] per day over 4 days, for a total of 16 hours."  *Id.*  That suggested accommodation came too late in the process. Because Mr. Rosbough has not shown that a requested accommodation, made in accordance with the appeal procedures was not provided, he has not demonstrated a *prima facie* case of disability discrimination.  There is no evidence that he was dismissed from the College or subjected to discrimination because of his disability.  Rather, his ultimate dismissal came after he failed to show up for the required test.  Summary judgment

should be granted in favor of all Defendants on these ADA and

Rehabilitation Act claims, counts 1, 3, and 4 of the complaint.[8]

## B.   § 1983 Claims

Mr. Rosbough's complaint asserted three claims against all

Defendants pursuant to a 42 U.S.C. § 1983: (1) a claim for "failing and

refusing to provide Plaintiff with reasonable and qualified academic

accommodations" as recommended by his psychologist (count 2); (2) a due

process claim for dismissing him based on his disability (count 5); and (3)

an equal protection claim for depriving him of equal access to academic

programs (count 6).  ECF No. 11 at 4-5.  Defendant FSU asserts its

entitlement to sovereign immunity.  ECF No. 34 at 24-25.

The law is well established that suits against States and state officials

are not possible pursuant to 42 U.S.C. § 1983 because the state, state

agencies, and state officials acting in official capacity are not "persons" as

intended by § 1983.  Will v. Michigan Department of State Police, 491 U.S.

58, 109 S. Ct. 2304, 2308-2311, 105 L.Ed.2d 45 (1989).  Furthermore, the

State of Florida and its agencies are immune from suit in this Court by

---

[8] In light of the fact that these claims are insufficient, there is no need to address
Defendants' arguments concerning individual liability.

force of the Eleventh Amendment.  Carr v. City of Florence, Alabama, 916

F.2d 1521, 1524 (11th Cir. 1990); *see also* Kentucky v. Graham, 473 U.S.

159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (reiterating that

"absent waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court.").  The

claims against FSU which are brought pursuant to § 1983 cannot survive

and summary judgment should be granted in favor of FSU.

"The Fourteenth Amendment equal protection clause provides that

'[n]o State shall ... deny to any person within its jurisdiction the equal

protection of the laws.'"  U.S. Const. amend. XIV, § 1 (quoted in Elston v.

Talladega Cty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993)).  "To

establish an equal protection clause violation, a plaintiff must demonstrate

that a challenged action was motivated by an intent to discriminate."

Elston, 997 F.2d at 1406 (citing Village of Arlington Heights v. Metropolitan

Hous. Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450

(1977); Washington v. Davis, 429 U.S. 229, 239–48, 96 S.Ct. 2040,

2047–52, 48 L.Ed.2d 597 (1976)).  Here, the equal protection claim cannot

survive summary judgment because Mr. Rosbough has not provided any

evidence which demonstrates that other similarly situated people were

treated differently. There is no evidence that any person was provided accommodations more favorable than the accommodations provided to Mr. Rosbough. There is no evidence that other persons were not terminated for the program after either failing the comprehensive exams twice or for not showing up to take the exams. Moreover, there is no evidence that any person intentionally discriminated against Mr. Rosbough, for any reason. Summary judgment should be granted in favor of Defendants Marcus and Blomberg on the equal protection claim.

The due process claims (counts 2 and 5) cannot survive because they are based on a claim that Mr. Rosbough was "unlawfully dismiss[ed] . . based on Plaintiff's disability . . . ." ECF No. 11 at 5. Thus, the due process claims are premised on the violations of the ADA and Rehabilitation Act claims. Because those claims fail for the reasons stated above, the due process claims must also fail. Thus, summary judgment should be granted in favor of Defendants Marcus and Blomberg on these claims as well.

Moreover, these § 1983 claims are duplicative and may not maintained in addition to the Rehabilitation Act and ADA claims. Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997) (concluding

Case No. 4:15cv583-RH/CAS

"that a plaintiff may not maintain a section 1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA.").  "To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple."  Holbrook, 112 F.3d at 1531.  The complaint did not allege a basis for Mr. Rosbough's due process claims separate and apart from his claim that he was dismissed because of his disability (count 5) and without being provided reasonable accommodations (count 2).  Summary judgment should be granted in favor of the Defendants on all claims.

Accordingly, it is **ORDERED** that Defendants' motion to strike, ECF No. 56, is **DENIED**.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the Defendants' motion for

summary judgment, ECF No. 34, be **GRANTED** as to all claims and

judgment entered in their favor.

**IN CHAMBERS** at Tallahassee, Florida, on August 21, 2017.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**